UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

KFC CORPORATION and KFC U.S PROPERTIES, INC.
    PLAINTIFFS

v.                                                        Civil Action No. 3:12-cv-564-H

ZUBAIR M. KAZI
    DEFENDANT

---

KFC NATIONAL COUNCIL & ADVERTISING COOPERATIVE, INC.
    PLAINTIFF

v.                                                        Civil Action No. 3:13-cv-291-H

ZUBAIR M. KAZI
    DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Defendant, Zubair Kazi, is the founder, Chairman, and CEO of Kazi Foods, Inc. Prior to a recent bankruptcy, four Kazi franchisees[1] operated 142 KFC restaurants. Kazi signed a guaranty agreement for each restaurant ("the Guaranties"). KFC Corporation ("KFCC") and KFC U.S. Properties ("KFC USP") seek to collect various debts allegedly covered by the Guaranties (collectively, "Plaintiffs"). The parties have cross-motioned for summary judgment. Kazi claims the Guaranties are unenforceable because (1) they do not meet the requirements of Kentucky's guaranty statute and (2) they lack consideration. Kazi has also requested that this case be consolidated with a breach of guaranty suit that KFC National Council and Advertising

---

[1] These entities, not parties to this litigation, are Kazi Foods of Florida, Inc. ("Kazi Florida"), Kazi Foods of New York, Inc. ("Kazi New York"), Kazi Foods of Annapolis, Inc. ("Kazi Annapolis"), and Kazi Foods of Michigan, Inc. ("Kazi Michigan").

Cooperative, Inc. ("NCAC") has filed against him.[2]  For the reasons that follow, the Court concludes that KFCC may enforce the Guaranties up to the liability cap and that consolidation is appropriate.

I.

The franchisees whose obligations Kazi guaranteed operated 142 KFC restaurants across a swath of states.[3]  Each franchisee filed for Chapter 11 bankruptcy in February and March 2011 in the Eastern District of Michigan and the cases were eventually consolidated into one proceeding.  As debtors-in-possession whose "primary goal" was "to effectuate a reorganization plan that would allow them to maintain their business operations through the restructuring of their debt obligations to both the GE Affiliates [a secured creditor] and KFC,"[4] the franchisees obtained approval to retain a Chief Restructuring Officer (the "CRO").  Many of the restaurants continued operating until February 2012 under the CRO's direction.  KFCC, KFC USP, NCAC and other KFC affiliates were unsecured creditors and participated actively in the proceeding.

Restructuring was subject to KFC's willingness to allow the franchisees to assume franchise agreements[5] but KFC declined to consent to that course of action.[6]  "Because [the franchisees] could not reach agreements with KFC with respect to (a) the terms of the

---

[2] The NCAC suit has been transferred to this Court for a decision on the motion for consolidation because this case was pending before the NCAC suit.  A pending motion for consolidation, identical for all pertinent purposes, is found at DN 26 in the record for Case No. 13-cv-291, and at DN 31 in this Court's docket for Case No. 12-cv-564.  The Plaintiffs jointly filed a response in opposition.

[3] Kazi Florida operated 20 restaurants, Kazi New York operated 56, Kazi Annapolis operated 21, and Kazi Michigan operated 45.

[4] Amended Combined Plan of Liquidation and Disclosure Statement, DN 14-9.

[5] KFC terminated the Michigan restaurants' licenses in December 2010 for pre-petition defaults under various agreements.  The other restaurants lost their licenses upon filing for bankruptcy, which was a default termination provision in the franchise agreements.  *See* DN 1-6, ¶ 17.2(a).

[6] The bankruptcy court denied the franchisees' motion for assumption of the restaurants in an Order entered August 4, 2011.  KFC successfully opposed this motion by arguing that none of the restaurants were licensed and/or had not cured defaults or given adequate assurance of future performance on franchise agreement obligations.  Each of the restaurants' licenses had been revoked, and a condition for renewing them was that a restaurant be current on all monetary obligations—a condition that was unmet for each of the restaurants.  Because of these failings, KFCC refused to consent to assumption.

2

assumption and/or assignment of the Franchise Agreements and (b) the restructuring of royalty, CAPEX and equipment finance payments," the franchisees decided the best course of action was to sale substantially all of their assets under section 363 of the Bankruptcy Code. Two buyers, Star KFC Realco Two, LLC and Star Partner Enterprises Two, LLC, purchased most of the restaurants in February 2012. The buyers assumed a specific list of liabilities on closing, but only property taxes and obligations under acquired contracts to the extent those obligations arose after the closing date. Aside from a payment of $150,000 to KFCC which partially paid down royalty amounts owed for the month of February 2012, neither KFCC nor KFC USP received any sales proceeds.

In this action, Plaintiffs seek to collect five main types of obligations: (1) pre-petition and post-petition[7] royalties owed under each restaurant's franchise agreement; (2) pre-petition and post-petition advertising and marketing fees owed to local co-ops, contemplated and required by the franchise agreements; (3) payments owed on third party equipment leases for special grilled chicken ovens, which KFCC guaranteed; (4) various obligations owed on ground leases for 13 restaurants that were leased, where KFC USP was either the sub-lessor or alleges it was contingently liable on the lease;[8] and (5) de-imaging costs KFC incurred to remove trade dress on certain restaurants, which costs were contemplated in the franchise agreements.

---

[7] Certain Kazi restaurants continued operating under the direction of a CRO after their bankruptcy petition. In the franchise agreements, royalty payments hinge on periods when a restaurant is "in operation" rather than when it is licensed, whereas advertising fees are owed "[d]uring the license term." DN 1-6, ¶ 8.1 and ¶¶ 10.1, 10.3, 10.4. The Michigan restaurants' licenses were terminated pre-petition, while the rest of the restaurants' licenses were terminated upon the franchisees' bankruptcy petition. *See* Bankr. Dkt. No. 356; DN 1-6, ¶ 17.2(a). The timeline of post-petition operations/closures is still unclear from the bankruptcy and this Court's record. That question can be determined when this Court determines the extent of Kazi's guarantor liability.

[8] Obligations owed include rent, property taxes, and/or lease termination fees. From the charts provided with the complaint, it appears that this part of the complaint implicates only 13 of the restaurants: Kazi New York leased 5 restaurants, Kazi Michigan leased 7, and Kazi Florida leased 1. DN 1-1-4. There are no ground leases in the record, so it is unclear which of the properties KFC USP subleased to a franchisee versus which properties it claims to be contingently liable on a franchisee's lease obligations to a third party: "As a result of the Franchisees' failure to pay all obligations, KFC USP has become liable for, and has been required to pay, the Franchisees' unpaid rent, rent for

Kazi's 142 Guaranties are identical except for the specific franchisee named as Obligor, the specific restaurant involved, the duration of the agreement, and the date of execution. The following exemplar provides the pertinent language in each Kazi guaranty:

> For value received, the receipt and sufficiency of which is hereby acknowledged, and in order to induce KFC Corporation ("KFC") and/or KFC National Council and Advertising Cooperative, Inc., Delaware corporations, (hereinafter referred to as "Obligees," whether one or both) to enter into certain Franchise Agreements, Advertising Agreements, Leases, Subleases, Promissory Notes, Mortgages, Deeds of Trust, Security Agreements, or Contracts and to do certain business with <u>KAZI FOODS OF ANNAPOLIS, INC.</u> (the "Obligor"), of <u>Hershey Pennsylvania</u>, the undersigned [**Zubair Kazi**] (hereinafter referred to as the "Guarantor[]" . . .) . . . **guarantee[s] unconditionally and absolutely to Obligees that the Obligor will fully, promptly and faithfully perform, pay and discharge all of the Obligor's present and future indebtedness or obligations to Obligees,** whether direct or indirect, absolute or contingent, primary or secondary, joint or several, and all renewals and extensions thereof, **including but not limited to, any indebtedness or obligations arising by any terms, covenants or conditions of any Franchise Agreements, Advertising Agreements, Leases, Subleases, Promissory Notes, Mortgages, Deeds of Trust, Security Agreements, or Contracts between Obligees and the Obligor,** including, without limitation, any representations, warranties and indemnities contained in such Franchise Agreements, Advertising Agreements, Leases, Subleases, Promissory Notes, Mortgages, Deeds of Trust, Security Agreements, or Contracts (collectively the "Guaranteed Obligations"), **relating to or arising out of the operation of a Kentucky Fried Chicken restaurant** (hereinafter referred to as the "Outlet") located at <u>1978 West Street, Annapolis, Maryland</u>.

(bold added). Each Kazi guaranty provides, "[I]n the event of default by the [named franchisee], [Kazi] . . . shall, on demand and without further notice of dishonor . . . perform, pay or discharge [the] Guaranteed Obligations and pay all losses, costs, and expenses which Obligees may suffer by reason of the default." The Guaranties identify themselves as "continuing" and "absolute" in nature. Because this enforcement action follows the franchisees' bankruptcy, the following provisions are uniquely operative:

> [Kazi] . . . waive[s] diligence, presentment, demand protest and notice of non-payment, protest and suit on the part of Obligees in the enforcement or collection

---

the remaining lease terms, termination fees, property taxes, and other amounts due under the leases for the Leased Restaurants." DN 1, ¶ 37.

4

> of any of the Guaranteed Obligations and agree[s] that Obligees shall not be required first to endeavor to secure performance or discharge of or collect from the Obligor . . . or to foreclose, proceed against or exhaust any collateral or security for any Guaranteed Obligations, before requiring [Kazi] to perform, pay, or discharge the full liability hereby created.
>
> . . .
>
> Any action or inaction by Obligees with regard to the Guaranteed Obligations or this Guaranty shall not impair or diminish the obligations of [Kazi]. Obligees shall not be liable for their failure to use diligence in the enforcement of collection of the Guaranteed Obligations or in preserving the liability of any person liable thereon.
>
> . . .
>
> [Kazi] hereby unconditionally and absolutely guarantee[s] the payment of all of said Guaranteed Obligations . . . and [Kazi] agree[s] that Obligees shall in no way be obligated to bring or prosecute any action against Obligor of said Guaranteed Obligations or make any demand on Obligor or give any notice of any kind to any party.[9]

Other notable terms in the Guaranties are (1) a provision for attorney's fees to any party that prevails entirely in a lawsuit invoking the guaranty, and (2) a provision capping the amount of maximum aggregate liability on each guaranty at $250,000.

Kazi's motion for summary judgment focuses on contesting the enforceability of the Guaranties. The Court limits its Opinion to that issue and the question of consolidation. Kazi's argument against enforceability is twofold: (1) the Guaranties do not satisfy the formalities required by Kentucky's guaranty statute; and (2) the Guaranties lack consideration. The Court will consider each argument in turn.

## II.

On summary judgment, a moving party is only entitled to judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

---

[9] Pursuant to these clear terms, KFC had no duty to take action against the Obligors, in bankruptcy court or otherwise, even though KFCC did in fact participate in the bankruptcy.

Fed.R.Civ.P. 56(c). The Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

III.

Kentucky's guaranty statute provides three ways for a guaranty to be enforceable:

> No guaranty of an indebtedness which either is not written on, or does not expressly refer to, the instrument or instruments being guaranteed shall be valid or enforceable unless it is in writing signed by the guarantor and contains provisions specifying the amount of maximum aggregate liability of the guarantor thereunder, and the date on which the guaranty terminates.

KRS § 371.065(1). If any one of the three prongs is met, the statute is satisfied and the guaranty is valid and enforceable. *Wheeler & Clevenger Oil Co., Inc. v. Washburn*, 127 S.W.3d 609 (Ky. 2004). The interpretation and construction of a contract is a question of law for courts to decide. *See, e.g.*, *Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872, 875 (Ky. 2006); *Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006). Here, the parties do not dispute that the Guaranties are not written on the instruments they purport to guarantee, so they must satisfy one of the other two prongs.

As an initial matter, the Court finds that neither Plaintiff is entitled to the ground lease-related obligations outlined in the complaint, at least not by operation of the Guaranties.[10] KFC

---

[10] The ground leases are not in the record, so the Court is unable to determine whether KFCC or KFC USP is entitled to ground lease-related debts under an express indemnity provision found in the leases, or whether the contracts give rise to implied contractual indemnity. The Guaranties are each plainly titled "Guaranty" at the top, so the Court will not construe the Guaranties themselves as indemnity agreements, notwithstanding the broad language purporting to entitle Obligors KFCC and/or NCAC to "all . . . indebtedness . . . whether direct or indirect, absolute or contingent, primary or secondary . . . arising by any terms . . . of any . . . Leases, Subleases, [etc.] . . .." *Cf. BP Prods. N. Am. Inc. v. McGuirk Oil Co.*, 2011 WL 2149627, *6 (W.D. Ky. 2011) (refusing to enforce a guaranty agreement as one for indemnity despite indemnity language).

USP is not a named Obligor in the Guaranties, so it may not enforce them for its benefit.[11] KFCC is not entitled to enforce the Guaranties for ground lease payments because the plain terms of the Guaranties limit Kazi's guarantor liability on "Leases" to obligations arising under leases "between Obligees and the Obligor." KFC USP, not KFCC, was the lessor or contingently liable on the ground leases at issue, thus KFCC may not enforce the Guaranties for ground lease obligations. Therefore, the Court will limit its discussion to whether KFCC may enforce the Guaranties to require Kazi to pay outstanding royalty payments, advertising fees, equipment lease obligations, and de-imaging costs.

A.

Kentucky's legislature does not prescribe a specific type of description necessary to "expressly refer to" an underlying instrument in order for a guaranty to be enforceable under the second avenue to enforcement. The statute's plain language is not excessively restrictive. "Express," when used as a modifier, means "particular[ly]; [with] specific[ity]"; "refer" means "to direct to a source for help or information," or "to direct the attention of."[12] The statute has been described as "a consumer-protection provision designed to protect the guarantor by *reducing* the risk of a guarantor agreeing to guarantee an unknown obligation." *Wheeler*, 127

---

[11] The Guaranties at issue are "special guaranties": they are not addressed to all persons generally but name as definite entities as Obligees thereunder ("KFC Corporation and/or KFC National Council and Advertising Cooperative, Inc."). Special guaranties may be enforced only by the specifically named entities. There is an exception to this rule when the guaranty is intended to benefit someone other than the addressee or named obligee. In that case, the guaranty is not considered "special," despite having been addressed to the specific individual. *See* 38A C.J.S. *Guaranty* § 116 (2013) (collecting cases). KFC USP does not argue, nor do the franchise agreements reflect, that KFCC intended the Guaranties to benefit KFC USP. It would have been easy enough to include KFC USP as an Obligee if that were so. The fact that KFC USP is not a named beneficiary also precludes KFC USP from benefitting from any argument that the Guaranties are, in effect, indemnity agreements. It is not a named obligee, and neither is it a constructive promisee/indemnified party.
    While these rules are not explicitly recognized in any Kentucky case, they derive from general contract principles followed in Kentucky, such as who may bring an action to enforce a contract. The Court is confident that Kentucky's highest courts would follow the general rule that a guaranty goes with the principal obligation and is enforceable (only) by the same person who can enforce such obligation.

[12] Webster's II New University Riverside Dictionary (1994 ed.). Kentucky's General Assembly directs that the words of statutes are to be interpreted "according to the common and approved usage of language." KRS § 446.080(4).

7

S.W.3d 609, 615 (Ky. 2004) (emphasis added); *see also Smith v. Bethlehem Sand & Gravel Co.*, 342 S.W.3d 288, 292 (Ky. Ct. App. 2011) (quoting *Wheeler* and explaining the statute "does not seek to 'eliminate' unknown obligations; it only seeks to reduce the risk."). Importantly, the second prong of the guaranty statute is met if a guaranty "expressly refer[s] to[] the . . . *instruments* being guaranteed," not the specific *obligations*.

Each respective Kazi guaranty expressly refers to the only instrument that matters for KFCC's purposes: the franchise agreement.[13] Each franchise agreement between Obligor KFCC and a franchised restaurant outlines the identical performance and/or payment obligations KFCC seeks to enforce: the obligation to pay specified royalties, to enter agreements and pay a minimum amount of profits to local advertising cooperatives, to de-image restaurants upon closure, and to update equipment upon reasonable request.[14] In each guaranty, Kazi agreed to

> perform, pay and discharge all of the [specified franchisee's] present and future indebtedness or obligations to [KFCC and/or NCAC] . . . including . . . any indebtedness or obligations arising by any terms, covenants or conditions of any Franchise Agreements . . . relating to or arising out of the operations of a Kentucky Fried Chicken restaurant (. . . "the Outlet") located at [specified street address].

---

[13] The complaint states that each of the restaurants' franchisee agreements are "identical in all pertinent respects" to the franchise agreement exhibited in the record, which is for an Annapolis store. DN 1, ¶¶ 14, 16, 18, 20.

[14] To determine the discrete question before the Court, which is *whether* the Guaranties are enforceable for certain obligations (versus the extent of liability), it is immaterial that franchisees entered specific oven leases and specific advertising contracts after Kazi signed the Guaranties, or that the precise payment terms for equipment, advertising obligations, and even remodel obligations, all mentioned in the franchise agreements, are more particularly elucidated in those other, more specific contracts. To be enforced under the second prong, Kentucky's statute requires a guaranty to expressly refer to an underlying *instrument*, not underlying *obligations*. Here, reading the statute to require otherwise would impermissibly disregard the provision in each guaranty that declares itself to be "continuing" in nature.

Whether KFCC was an intended beneficiary and may collect amounts owed by the franchisees under the advertising and equipment lease contracts is a question that can be decided at a later date, when the Court determines the extent of guarantor liability owed by Kazi.

Although the Guaranties purport to obligate Kazi to pay a bevy of other types of present and future indebtedness and obligations under various other agreements, all that matters to KFCC's claims is that the Guaranties expressly refer to each restaurant's franchise agreement.[15]

Kazi relies in part on the unreported case of *Brunswick Bowling & Billiards v. Ng-Cadlaon*, 2011 WL 5244971 (Ky. Ct. App. Nov. 4, 2011). This opinion does not decide our case.[16] There, the court held that the guaranty at issue did not expressly refer to an underlying promissory note: "[R]ather, [the guaranty] binds [Ng-Cadlaon] to a broad range of potential present and future obligations. The fact that the note at issue falls within one of the categories of obligations listed in the guaranty is insufficient in itself to constitute an express reference."[17] Here, there is more to consider than the lone fact that the material obligations are found within one of the categories of agreements referenced in the guaranty. Each guaranty identifies a specific restaurant by its geographic street address. Because each restaurant was subject to but one franchise agreement at all times, the generic term "Franchise Agreements," although pluralized and found among a "laundry list" of other types of instruments, actually refers to a specific document in each guaranty. Further, though not a prerequisite to enforceability under the second prong, each franchise agreement lists the geographic address of the subject restaurant on the first page of the document.

---

[15] The fact that the Guaranties may be ineffective to enforce other obligations is inconsequential; the Guaranties contain a severability provision: "[I]f any provision or provisions of this Guaranty should be invalid or ineffective, then all other provisions shall continue in full force and effect notwithstanding." The Guaranties also insure that they will be enforced (at least under Kentucky's statute) by capping "the maximum aggregate liability of the Guarantors under this Guaranty" at $250,000 and including a termination provision that refers to the execution date.

[16] Defendant Margaret Ng-Cadlaon signed a guaranty that read, in pertinent part, "To induce [bank/Obligee] to enter into one or more security agreements, including but not limited to conditional sales agreements, leases, chattel and/or real estate, notes or other deferred or time payment paper . . . (the 'Security Obligations') with the [guarantor's company] . . . the undersigned . . . agree to be . . jointly, severally and directly liable to you for the performance of all such Security Obligations."

[17] *Id.* at *2.

Our case more resembles *Alliant Tax Credit Fund 31-A, Ltd. et al. v. Murphy*, 494 Fed. App'x 561 (6th Cir. 2012). There, the Sixth Circuit examined the second prong of Kentucky's statute and concluded, like the district court before it, that the guaranty was enforceable. In reaching its decision, the district court rejected the argument that the phrase "expressly refer to" requires that an obligation be apparent without reference to any other documents.[18] The guaranty at issue there explicitly guaranteed "obligations of the General Partner under the Agreement," and defined "Agreement" as the "Amended and Restated Agreement of Limited Partnership as of December 8, 2003." Similar to Kazi's position here, the guarantor argued that the guaranty purported to obligate him on "another set of 'Instruments,'" and because these instruments were (a) not expressly referenced and (b) not executed, he could not "determine the full extent of [his] indebtedness" under the guaranty and, therefore, the whole guaranty should be held unenforceable. The Sixth Circuit found this to be immaterial to the enforceability of the guaranty as to the obligations found in the "Agreement."

Likewise here, what matters is that Kazi's Guaranties expressly refer to the franchise agreement for each outlet. And they do: they list "Franchise Agreements" in the list of instruments covered, name the specific parties to the Guaranties by name and, in the franchisee's case, by specific geographic address (this information also appears on the first page of the corresponding franchise agreement), and identify each restaurant outlet's specific geographic address (also found on the first page of the corresponding franchise agreement).

For all these reasons, the Court concludes that the Guaranties are enforceable.

---

[18] *Alliant Tax Credit Fund 31-A, Ltd. et al. v. Nicholasville Cmmty. Housing, LLC, et al.*, 663 F.Supp.2d 575, 583 (E.D. Ky. 2009).

B.

The Guaranties arguably satisfy the third prong of Kentucky's guaranty statute as well. Each guaranty caps the maximum aggregate liability thereunder at $250,000 and includes a termination date that refers to the date of execution "set forth below." The Guaranties typically stated that they terminated twenty-five years from the date of execution. Kazi argues that the guaranty agreements did not have a termination date when he executed them, therefore they are unenforceable. By way of answer, KFCC does not rebut this specific argument but claims that its practice was to stamp a date onto the signed guaranties after receiving them (and other documents and licensure payments due under the franchise agreement) in the mail.

Neither of the party's explanations of the sequence of events appears to be entirely accurate. A review of the Guaranties reveals that in almost every single date-stamped guaranty, a handwritten date of execution was redacted before the date-stamp was applied. That is, the Guaranties *did* have a termination date when Kazi signed them (X number of years from whatever date Kazi wrote on the lines "Executed this ____ day of ____, 19 [or 20]___"), but in most cases, KFCC redacted that date and stamped a slightly later date upon receipt of the Guaranties in the mail. In any event, KFCC is not attempting to enforce the Guaranties *after* the termination date—none of the termination dates are close to ending, rendering inconsequential any discrepancy between the date Kazi wrote in (or did not) and the date KFCC subsequently date-stamped onto the Guaranties. More importantly, the liability cap of $250,000 for each restaurant applies whether the Guaranties are enforceable under the second *or* third prong of the statute, which significantly weakens any threat of overreaching. Because the Court has already concluded that the Guaranties satisfy the second prong for most of the obligations, and that

neither plaintiff can enforce the Guaranties for the ground lease obligations, the Court need not definitively decide whether the Guaranties satisfy the third prong of the statute.

C.

Finally, Kazi also argues that the Guaranties are not enforceable because they lack consideration. The Court does not find this argument sufficient. "[W]here the consideration between the principal obligor and the creditor has passed and become executed before the contract of the guarantor is made and the guaranty was part of the inducement to the creation of the original debt, such consideration is sufficient to the contract of the guarantor." *Smith v. Bethlehem Sand & Gravel Co., LLC*, 342 S.W.3d 288 (Ky. Ct. App. Apr. 22, 2011) (citing *Snowden v. Leight*, Ky. L. Rptr. 121 (1883)). Kazi's attempt to distinguish this case from *Smith* is unpersuasive; the minor differences do not detract from the application of the general rule here.

Here, each guaranty expressly recites that KFCC gave sufficient consideration for the guaranty and was induced to do business with the Kazi franchisees, including entering franchise agreements with it, based on Kazi's willingness to personally guarantee certain debt and obligations:

> For value received, the receipt and sufficiency of which is hereby acknowledged, and in order to induce KFC Corporation ("KFC") and/or KFC National Council and Advertising Cooperative, Inc., Delaware corporations, (hereinafter referred to as "Obligees," whether one or both) to enter into certain Franchise Agreements . . . . [Kazi] . . . guarantee[s] unconditionally and absolutely to Obligees that [the named franchisee] will fully, promptly and faithfully perform, pay and discharge all of the [the franchisee's] present and future indebtedness or obligations to Obligees.

Extrinsic evidence also confirms that the guaranties and franchise agreements were basically part and parcel of the same transaction. Under these circumstances, the Court finds sufficient consideration to enforce the Guaranties.

D.

In sum, KFCC may enforce the Guaranties to collect (1) royalty payments, (2) advertising payments, (3) de-imaging costs, and (4) equipment lease payments because each of these obligations are explicitly contemplated in each outlet's franchise agreement and the subject Guaranties each expressly refer to their corresponding outlet's franchise agreement.[19] Nevertheless, the liability cap provision remains operative to cap the damages at $250,000 for each restaurant.[20]

IV.

Consolidation is discretionary under Federal Rule of Civil Procedure 42(a).[21] The Court sees some benefit in consolidating this case with the one that NCAC has filed against Kazi. NCAC is suing Kazi for guarantor liability arising from three separate promissory notes that NCAC extended to various bankrupted franchisees. Kazi argues that, because NCAC is a named Obligee in the 142 Guaranties discussed here, NCAC could resort to those Guaranties if need be. However, the need to resort to the "KFC Corporation and/or NCAC" Guaranties discuss herein is virtually nonexistent: the three guaranties NCAC invokes are written on the promissory notes they guaranty and dated on the same date (December 15, 2010). Regardless, the two cases arise from the same operative facts and it would seem that consolidation benefits judicial efficiency and does not unduly prejudice any party.

Being otherwise sufficiently advised,

---

[19] Kazi is potentially liable for all four categories of obligations because the Guaranties expressly refer to the restaurants' franchise agreements, which in turn embody all of these obligations. But KFCC's ability to collect amounts owed for obligations (2) and (4) will depend on its ability to prove that it is an intended beneficiary of the franchisees' contracts with various local advertising co-ops and the oven equipment lessor.
[20] Plaintiffs concede that the liability cap applies here. DN 17, p. 10.
[21] Rule 42(a) provides "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the action; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."

IT IS HEREBY ORDERED that Defendant's motion for summary judgment (DN 19) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' motion for summary judgment is SUSTAINED as to Kazi's liability as described in this Memorandum Opinion.

IT IS FURTHER ORDERED that on or before July 21, 2014, Plaintiffs here shall file a memorandum setting forth their damages; Defendant shall reply on or before August 18, 2014.

IT IS FURTHER ORDERED Defendant's motion for consolidation (DN 31, DN 26[22]) is SUSTAINED and *KFC Nat'l Council & Adver. Coop., Inc. v. Kazi*, Case No. 13-cv-291, already transferred here, will remain for further proceedings.

cc: Counsel of Record

---

[22] A motion to consolidate is found at DN 31 in Case No. 12-cv-564, and at DN 26 in Case No. 13-cv-291.